Would you like to reserve any time? I would like to reserve two minutes. Two minutes, okay. Whenever you're ready. Thank you. So may I please report good morning? As you've stated, my name is Anne Traum, and I represent Steve Houston, Petitioner in this case. And I will reserve two minutes. I'll try to keep my eye on the clock as well. Okay. I'm sure you'll remind me. Well. Houston presents two related Sixth Amendment violations in this case. First, he was denied the right to his counsel of choice when the trial court denied a motion to continue based on its arbitrary insistence on a 60-day trial date that Houston never agreed to, and then forced Houston to go to trial with appointed counsel who was ill-prepared and conflicted. And secondly, and related on the conflict, Houston was denied his right to conflict-free counsel because the appointed counsel, who was from the public defender's office, his office had previously represented the star witness in this case, Terrence Chadwick, in a factually related case. But the attorney had never been involved in the case at all, right? Never been involved, and his matter was completed. Correct. Correct. And is there any evidence in the record whatsoever that suggests that he received any information from his colleagues in the public defender's office? Well. About Chadwick? I mean, I will, I will. About Chadwick. The evidence in the record is that he said he knew that the client had failed a polygraph. He, for some reason on the record, he stated that Chadwick had to go to prison for two years for something he didn't do. Now, he doesn't explain that sentiment, but somehow he feels that this person was know about this case. He's obviously done no research on Chadwick at all when they're dealing with the motion to continue because it wasn't until the night after they picked the jury, before they're about to open, he comes back to court and then only then discovers that his office had previously represented him. So I think there may be more about his feelings about the case because he has expressed some sympathy for Chadwick as well as believing that he's innocent. And then what we do know that he knows, and I cover this in detail in my brief, he knows that he's on parole. He knows that he's failed a polygraph test. He knows he has a prior conviction that is factually related, meaning this is a multi-count case where Chadwick pled guilty to avoid an attempt murder conviction, and the person he was accused of attempting to murder, I believe, is either Houston because Houston was in the house that he eventually pled to shooting into. Houston had been there. So this is very factually related to that. But in this case, in this case, Ms. Trom, under Nevada law, the polygraph test would be inadmissible, so that wouldn't have any impact, would it? It would. Because, I mean, we have cases like Davis v. Alaska, which is a United States Supreme Court case, where the Court said, well, of course, you can impeach someone on you can impeach a witness who's on parole, for example, even though the State court rules say that that parole that the juvenile status can't be disclosed. So if you have a State court, and we also have Nevada case law, Lobato, which I cite in my reply brief, which says, you know, anything to show motive and bias is basically fair game. So there's two arguments here. One is that even if you don't disclose the polygraph result precisely, which might be need to be stipulated to, there's no effort to either get that stipulation or do anything else. Same with the firearms conviction? Pardon me? Same with the prior firearms conviction? I think that's all. That would not be admissible either, right? You may not. You may be restricted to go into it if it's not related. Here it is related. It is material. And those are essential to showing that this person is biased, has a motive to lie, has an interest in lying to keep himself out of jail because he doesn't want to go back on a parole violation. These are all interrelated. And even if you don't exclusively or if you don't precisely admit the polygraph test, which I debate whether you could get into that because I think you could, at least in a roundabout way, you can set the stage for a very aggressive or at least a minimally effective attack on this witness's credibility. Now, Jorgensen, the appointed counsel, he understands that his job is to show at trial Chadwick is the aggressor. That's sort of a factual issue in this case. And Chadwick is a liar. Now, he tried to kind of in a not very impressive way sort of goes into the facts of the case. He does not lay a hand on this guy at all as a liar. And that's a critical, this is a credibility test. Chadwick is the only person who says that my guy had a gun and shot. So that's the issue in the trial. I do want to spend, I think that the right to counsel of choice, since we've sort of gone a little bit into the conflict issue, is very important here. I cited by 28J letter, Bradley v. Henry, this Court's recent en banc decision. And I think that what Bradley tells us are three things. One, it reemphasizes, as the Court did in Gonzalez v. Lopez, the specialness of the right to counsel of choice and how that's a unique right. It reminds us to look at the sort of whole atmosphere of the basis for a motion to continue and the motion to substitute counsel. And importantly, it reminds us to examine closely whether the Court had any actual legitimate and non-arbitrary reason for denying the motions or motion to continue. And that's critical in this case, because here we have a client. And I can't find any case that really sort of is analogous in terms of the timing issue. Here we have a client. The first thing he says after saying he's not guilty at his arraignment is, I want to waive my speedy trial rights, 452 of the record. But he doesn't say anything about retain counsel. He doesn't at that point. But he wants more time. This guy is looking at 150 years, potentially. He wants more time. He has actually had, I looked up, he had two prior court proceedings. And the first thing out of his mouth in those cases, I want to waive my speedy trial rights, in those cases. It worked in those cases. No one allowed him to do it in this case. So then he gets locked in. When the Court invokes for him, he gets locked into the speedy trial. And he has, on the one hand, counsel who knows, has known since before his arraignment, since before the preliminary hearing, that he wants to retain counsel, that he wants more time, and yet is doing nothing to protect that interest. And at the same time, that same counsel admits that he's not really preparing for trial in the same way that he would if he believed that counsel wasn't going to retain, because he sees that he's going to be let off this case and kind of steps back and limits his effort. Hence, the failure to discover this obvious conflict. He says he admits that he's not contacted witnesses that the Houston wants him to contact for whatever reason, he says. So he's kind of doing nothing on two ends, not protecting his counsel. Kennedy. Counsel, what's your ---- Or if he doesn't. Did you agree that the standard we're looking at here is Morris v. Slappi? I think that Morris v. Slappi helps the Court to analyze the issue of whether the Court had the Court's interest in protecting its calendar. But even Morris ---- and then I think that Gonzalez v. Lopez adds a dimension to the Morris v. Slappi analysis, which is here we have a constitutional issue, not just in getting ---- I mean, Morris v. Slappi says that if you unjustifiably deny a motion to continue based purely or primarily on insistence on expeditiousness, that is the denial of assistance of counsel. And here that is kind of a double whammy, because it's not just the denial of appointed counsel, it is the denial of counsel of choice. Okay. You hold that good thought. We're going to save you two minutes for rebuttal, and then we're going to hear from counsel for the government. Okay? One more thing. No. Let's do it on the rebuttal. You're doing very well, though. Thank you. I like the encouragement. Ms. Hulse, right? Yes. Good morning. My name is Reen Hulse. I'm with the Nevada Attorney General's Office, and I represent the Respondents. As counsel noted, we have two issues before us today, one regarding the continuance and one regarding the conflict. She concluded with the continuance issue, which I'd like to point out a few salient facts that I think militate against her client's obtaining relief in this case. No matter how it happened, no matter how his right to his 60-day right under the statutory law to trial within 60 days happened, at arraignment on October 10th, 2000, Mr. Houston walked out of the arraignment knowing that his trial was set for December 11th, 60 days out. At that same time, he told his retained counsel, I'm going to get private counsel and I'm going to bail out. He told his appointed counsel. Yes. He also at that time, according to what appointed counsel told the trial court much later on, he also told him that his client wasn't terribly forthcoming with information because he was planning to get retained counsel. Then on November 28th, 2000, which is still two weeks before trial, a meeting between appointed counsel and Houston, Houston brings up again that he's going to he wants to hire counsel of choice, and he's warned at that point in time, you're running out of time, you have to do something. We're two weeks out from trial. He's got warning. Still he does nothing. The issue doesn't come up again until we get to the Petrocelli hearing or close to the calendar call several days before trial, where now Mr. Houston asks for a continuance because he still wants to hire private counsel. He hasn't done it at that point, and he didn't do anything or he didn't get a formal appearance from private counsel or retained counsel until the morning of trial. I think it would be the rare instance indeed where you would go into any courtroom, any trial courtroom in a busy urban area with an overloaded calendar that a trial judge would grant a continuance on the day of trial when the defendant has had two months' notice of the trial date and does nothing to make that happen. Didn't the Court actually warn the defendant and his counsel that no trial continuance would be granted sometime before the actual trial date? I think Judge Mosley said on the record, I believe on the morning of trial. I have it as ER 20 and 27. I believe he said he did give some warning, but I don't believe it was as long as the trial judge thought, because there hadn't been that many court appearances before then. Petrocelli hearing, I believe on December 7th, was probably the closest period to trial when the judge had an opportunity to say, I'm not going to grant a continuance at this late date, especially since you haven't got counsel at this point, because at that point he's still talking about getting private counsel. My point is, he had knowledge. He didn't act diligently. The trial court was clearly within its, acted within sound discretion by not granting the continuance of four to eight weeks is what the continuance request was. In that instance, I don't believe any of the rules of Morris v. Slappy or Unger v. Serafi would have been indicated at that point. The Nevada Supreme Court cited both of those cases. And in that instance, it's, the district court would be proper to uphold, to uphold the State court's decision. There would not have been an objectively unreasonable application, clearly of the Nevada Supreme Court authority, in order to overrule the State court's decision. That's all I have on that issue. I would also, as to issue two with the, regarding the conflict of interest, there's a few points that are worth noting, and that's the nature of the conflict that we're looking at here. We're talking about appointed counsel was a public defender in the Clark County Public Defender's Office representing Mr. Houston. On the second day of trial, he came in and asked to withdraw because he had just discovered that a separate attorney in his office had previously represented the victim witness in this case. So we're looking at not only successive representation, we're also looking at imputed representation. Counsel, as I asked before, I do think a critical question here is what did Jorgensen know about Chadwick? Counsel responded that you can impute or imply certain knowledge based on statements that he made concerning the prior case, concerning his innocence, concerning where his heart was. Those were rather cryptic remarks, but they do seem to suggest that he must have found out something about the case and had some emotional tie-in to this witness who was the star witness against his client. It is rather an awkward situation. It is a little bit possible that he had some knowledge. I think we have to go with what he actually told the court. He said his heart belonged with the previous client, and I think everybody in the courtroom kind of took a large sigh like, how can that be? And upon further questioning, there was questioning about what kind of confidential information that he had or any kind of insight information that he had into that prior court proceeding. There is some indication that there was a relationship because there's been this ongoing feud between this family or some gang-type activity. But there was not any kind of information beyond that to give any specifics to the court or to our attorney that he knew something more than that was going on. I'm sorry. No, please. Why would a Federal public defender make those types of comments if he had not obtained, I want to say, inside information from his colleagues in the office about the case? I mean, that seems like an odd thing for a Federal public defender to say without having some basis to say it. I'm a little confused about this was a State proceeding and there was a question. I keep saying Federal public defender. I'm sorry. Absolutely right. It's the Clark County Defender's Office. But in any event, a public defender. That he said – I'm sorry. He gave some indication that his heart was with Chadwick, that his – that is certainly a strong sympathy for Chadwick as opposed to his own client. I think it's odd also, and because opposing counsel took the opportunity to speculate on some matters, I would say that my speculation, and that's all I can give you because I don't have a clear record on that, my speculation is that he had a client that didn't want him, wanted his counsel that he had paid for, did everything he could to get a continuance and didn't get it. And I think he was still somewhat acting in that behalf by trying to get a continuance to the trial and get – to get what his client wanted on that. That's my speculation. But I think it was hard for me to swallow the comment, and it's a very limited comment that was followed up by a clear explanation that the attorney felt that he could represent this person adequately. He had no confidences that he would have to expose on the stand, and he felt confident that he could move along with their stated defense, which was to try to attack the credibility of that victim witness. And there's been no showing that anything other than that, any kind of adverse effect other than that occurred. I have some legal argument in my brief that is probably not worth mentioning at this point, if you have any other questions. Who's burden is it in this situation to show on the record these conflicts? Is it the defendants? Does the government have to – if there's something raised, does the government have to go first? Whose burden is it? Well, I think we're getting into some of the legal rules that are set forth under – by the Supreme Court that are a little bit hazy at this point about whether the – if the – if an objection is raised or counsel raises the objection or brings it to the court's attention that there is a conflict, that the court has a duty to inquire into it and to determine the level of the conflict and to determine whether there is truly something that's going to keep counsel from acting in the best interest of his client. We did have that hearing. And even if that hearing hadn't occurred, I think we've got Ninth Circuit authority that tell us that we still can't apply the lower standard of Kyler v. Sullivan. I believe that the standard that would be applied would be Strickland, that the defendant – that the Petitioner has to show prejudice, and he hasn't met that standard in this case. So in this case you say you think ineffective assistance of counsel in Strickland is the standard, and in this case it's your position that the defendant simply didn't make that showing. No. And I believe that in this point – in this case, Mr. Houston is trying to invoke the rule, the lower standard of Sullivan, which gives prejudice – which has prejudice presumed. And I don't believe they've met that standard, especially with imputed and successive representation. Great. Thank you very much. Let's hear the rebuttal argument then, please. I will try to be quick. I have a very few points here to make. First of all, just picking up on the standard, the law in this circuit is Alberni, and Alberni says that it takes sort of a Collier approach, but it says the test is adverse performance. And if you have adverse performance in a conflict situation, you're done. And if we need an evidentiary hearing on that. But in this case, adverse performance is – you've listed these various things, the polygraph, the various cross-examination. That's the universe of your adverse performance, right? That's the adverse performance. So you have the court has a duty to inquire about the conflict, plus we have we need to show adverse performance, and you may need an evidentiary hearing on that issue, which we could do. And then you don't get to the prejudice is sort of the second aspect of, you know, that Strickland doesn't apply based on Alberni. But in our analysis, we need to look at those four factors, I believe it's four, that you listed to make a determination whether, in fact, they really were adverse. Exactly. The court's inquiry and the waiver fits into that, which I've briefed, and then also the actual performance of counsel. I think what's interesting is that Bradley reminds us that the conflict issue is integral to the right to counsel of choice. And here, in the Bradley situation, they're looking at the potential retained counsel's conflict. Here, what's interesting is that we have this huge looming conflict with appointed counsel that really interferes with the effective representation of my client, but also sort of makes his denial of right to counsel of choice that much worse. And I think also the fact that your client may or may not have been gaming the system play into this. I don't think he's. I mean, I just don't think he is gaming the system. He's railroaded into this trial, and he's telling his counsel. His counsel knows from day one he doesn't want to go to trial. So what interest does trial counsel have in not alerting the court to that fact? What interest? And then you have to ask, and I need to get this in, what are the trial court's reasons? The trial court is insisting on going to a trial in 60 days in a case has — it is not a situation where special arrangements have been made for this calendaring. It is not a lengthy trial. Kennedy, you know, if you'd let us know earlier, we could have postponed it. But it's, you know, I think — He tells them on December 5th on the record page 443, 444. On December 5th, he then announces this is actually going, it's not going to overflow. That's an often usual course, okay? And then, but there's no special jury arrangements. The State makes no proffer at all that there's anything special about this case that means that it has to go. All of the witnesses are local. No one is in danger of becoming unavailable. No jurors have been somehow specially questioned about this case to prime them for jury selection. There is not a complex case. It's a two- to three-day trial. That's what the State says. That's all on the record? That's all on the record. So what is the special reason that makes us railroad this client under this situation to be forced to go to trial with ill-prepared and conflicted counsel? There's no reason. Well, thank you both very much for your argument. We appreciate it. The case of Houston v. Shomig is submitted. And we will next hear argument in United States v. Campion.
judges: Canby, Smith, Larson